on behalf of respondent appellant Johnny Butler here under Illinois Supreme Court rule 711. Good morning, Spock. Good morning, Lindsey Payne from the Attorney General's Office on behalf of the people. Good morning. All right. And the record should reflect that Daniel Coyne is also present in the courtroom supervising as the supervising attorney from Spock. All right. All right. Spock, you may proceed. Good morning and welcome. Thank you, Your Honor. May it please the court if I could reserve three minutes for rebuttal argument? Yes. Thank you. Your Honors, individuals who commit sexually violent offenses are not subject to the court's guidance that sexual assault offenses are met with repugnance, hatred, and fear. Our Illinois Legislature has designated respondents in sexually violent person's commitment proceedings as the worst of the worst when it comes to sex offenders. It is against this backdrop that Johnny Butler came to trial by jury on August 25th, 2011. Your Honors, we raised five issues in our brief. I'd like to focus on three of those issues, but of course I'm happy to answer any questions in respect to anything we raised. First issue, Mr. Butler was a impartial jury where the trial court improperly limited Gwadir. Second, that Mr. Butler was denied his right to a fair trial where the state improperly argued basis of opinion testimony as substantive evidence before the jury. And third, that Mr. Butler was denied his statutorily guaranteed right to a dispositional hearing. Turning to my first issue, the trial court abused its discretion when it limited Mr. Butler's proposed question, which was, can you be fair knowing about one sexually violent offense instead of multiple? In this case, the trial court had initially accepted Mr. Butler's proposed question, which was, can you be fair knowing that Mr. Butler had been convicted of a sexually violent offense on three separate occasions? What was the trial court's reasoning for limiting the Gwadir to the idea of, can you be fair knowing that Mr. Butler had been convicted of a sexually violent offense? The trial court was concerned with the fact that it was concerned with it was too fact-specific, Your Honor. It relied on two cases, people v. Buss and people v. Jackson, when it came to that conclusion, and it did that by way of a sua sponte ruling where it said it, quote, through responded, a curveball and limited that question down to one offense. So it was concerned with it being too fact-specific. Didn't the court also rely on Supreme Court rules that suggest that the court, that the lawyers are not supposed to direct questions specifically to the facts or the law during this portion of the proceedings? That is the rule, Your Honor, and it's absolutely correct. However, this was not a fact-specific question. This was simply a question that had the minimal amount of detail necessary to satisfy the purposes of Gwadir, which is that there is a reasonable assurance that potential bias and prejudice could be detected from the jury. So it would be our position that the question asked was insufficient to detect that bias and prejudice. Were there a number of individuals, though, that were excused for cause? That's correct, Your Honor. About how many? Over 40 percent of the Vennire was 19, I believe. And weren't there other members of the Vennire that were there present listening to the questions? That's correct, Your Honor. Doesn't that suggest that they, that their bias, if they had it, would have come out just like every other of the 40? What it suggests is that there was a reasonable amount of bias with respect to only one offense. And here, there was not going to be only one. There was going to be three. And not only the names of these offenses, which was attempted rape, rape and deviant sexual assault, and attempted aggravated criminal sexual assault, it was not only the names, the dates, it was the graphic and prejudicial details of all those offenses that were going to be before the jury. So the question about the one offense... Well, you didn't, in the trial court, request that the question to the jury be about those graphic details, did you? No. It was just a question of whether they were going to be asked about whether they could be fair if he was convicted of an offense versus three offenses? That's correct, Your Honor. Are you saying that there's a class of jurors out there that wouldn't be biased against someone who was convicted of one offense, but would have been biased if they learned that he was convicted of three offenses? Yes, Your Honor. And what do you base that on? We would base that on, first of all, with the legislation, the SVP Act, our Illinois legislature has designated respondents to be the worst of the worst when it comes to sex offenders. So our legislature has recognized that there's a difference between a sex offender in general and someone who commits multiple offenses, which would be sufficient to form the basis for a diagnosis of paraphernalia not otherwise specified. So because the legislature has recognized it, and we know that sex offenses are potentially very inflammatory and very prejudicial, the respondent in this proceeding, where there's going to be multiple and they're going to be graphically exposed, that that would be a different reaction from a juror rather than just one offense. Don't you have to show, based on traditional case law, that if you're complaining about the court's failure to inquire in a specific area, that you have to then show that there was a biased jury in this proceeding? Your Honor, the standard with respect to voir dire is whether there was a reasonable assurance created to guarantee that bias and prejudice was detected. And here... You don't have to show in any way on appeal that there was some sort of bias? Your Honor, the record is silent with respect to an actual indication. All we have is the fact that 40 percent said they couldn't be fair in knowing that only one... I'm just curious. Doesn't the case law suggest that you have to establish here that there was a biased jury in order to obtain relief based on this error, if it is an error? Yes, Your Honor, but the fact that 40 percent said they couldn't be fair and the fact that one equivocated, that this isn't speculative that the jury was biased. We're quite sure that the jury was biased. I mean, we as attorneys have established the limitation on voir dire, maybe a risk for error. We've done this in cases with gangs, abortion, and the insanity defense. Similarly here, we have a situation where not only did the sexual offenses go to the state's case in both the second and third element, because as I previously stated, those offenses, two or more offenses were necessary to come up with a diagnosis of paraphilia not otherwise specified. We have them coming in. We knew they were coming in based on pretrial discovery and depositions. And in addition, the state used the convictions as part of their theme when it stated in an opening argument that he committed these crimes over and over and over. And similarly in closing and in rebuttal sitting, look at what he did to these poor women. What is the standard of review that we look at in terms of the first issue that you're presenting? That would be abuse of discretion. And what is the standard sort of general language for the standard of review of use of discretion, if you translate? Sure. Whether the trial court and the conduct of the trial court during voir dire thwarted the selection of a fair and impartial jury, which that is what happened here. And that's in People v. Johnson, Your Honor, that that's set forth. What about the traditional language that no reasonable finder of fact would have conducted the voir dire the way this judge did? Isn't that the standard of review for voir dire? Yes, that is the standard. And you'd agree it's a fairly high hurdle to say that the judge, that no one else would have conducted the voir dire as he did based upon case law and his interpretation of Supreme Court rules, that he wanted to ask the jury in this fashion about could you be fair if you hear that the defendant has been convicted of a sexual offense? Yes, Your Honor, it is a high hurdle. We believe it is not in this case. If we look to the Roberts v. Sisters of St. Francis Health Services case, this court found that a more fact-specific inquiry is required where an issue or a matter is going to be inflammatory and graphically exposed to the jury throughout trial. In that case, this court found that it was not an abuse of discretion for the trial court to permit defense counsel to show a 20-minute-long, day-in-the-life video of a 9-year-old spastic quadriplegic. All Mr. Butler was seeking to do is to ask one additional question with respect to the multiply violent offenses which are going to be graphically exposed and integral to the state's case. If I could turn to my second issue, that the state improperly argued basis of opinion testimony as substantive evidence during closing argument. In Mr. Butler's case, there was a motion in limine that was granted which precluded the state from using the basis of opinion testimony improperly. It is well established that under... Was it improperly or was the motion to not argue the previous convictions for sexually violent offenses as substantive evidence? Yes, that's correct, Your Honor, to not use it as substantive evidence. Based on the motion, which was based on Illinois Rule of Evidence 703 in Molson v. Clark, the state argued in closing argument by starting off with the details of the convictions and the arrests outside the context of any discussion of the elements that it had to prove. The state started off, and it was arguing this information outside the context of any discussion of the elements that it had to prove, for the truth of the matter asserted, as substantive evidence. Were they instructed about the fact that what the lawyers say in opening and closing are not evidence? Was the jury instructed in this case? Yes, Your Honor. But the way that the state argued it, as for the truth of the matter, and the nature of the argument was very inflammatory. When you said that this was argued for the truth of the matter asserted, what is the truth of the matter asserted that they were using it for? They were using it to say that because he has committed these offenses in the past, he is dangerous and the jury should find him to be a sexually violent person, which we know from In Re Commitment of Samuelson is improper, that a respondent cannot be committed on past conduct. But that is essentially what the state was asking the jury to do by arguing the evidence this way. The state, just to give Your Honor as an example... When reference is made to whether something is offered for the truth of the matter asserted, isn't that referred to the matters that are asserted in the evidence, such that he committed this particular rape in this particular way to prove that he committed this rape in a particular way? Isn't that the truth of the matter asserted? That's correct, Your Honor. Did they do that? Was that really at issue? The manner in which the... Other than to bolster the expert's opinions, was the underlying facts at issue at all? The underlying facts... The question that the convictions happened, that wasn't contested, was it? That's correct, Your Honor. That was not contested. So then what's the truth of the matter asserted? The truth of the matter asserted, for example, in the hearsay analysis, is when you say this was done, it's to prove this was done. So why is that... How did the state use that? Well, the issue really comes down to the fact that this evidence was only allowed in for a limited purpose. And so it would have otherwise been inadmissible hearsay because it was coming from police reports and IDOC documents and various other documentary evidence, which was not admissible in the trial. So that's, Your Honor, what I was referring to. Right. So it's not admissible to prove that these attacks happened in this particular way, right? But that wasn't at issue in the case anyway. So I'm not sure that I understand the argument that the state was using that to prove that the truth of the matter asserted was not at issue. That's correct, Your Honor. But by arguing it as if it were true, as if it was substantive evidence that had been admitted during trial, the state was inflaming the passions of the jury. And it also is, in taking into the context of the entire closing argument, where the state starts off going through the details saying things like, he started in 1997. He started with an attempted rape. He had some kind of a fixation on University of Illinois Chicago campus. And the first rape started there. He asked for change. He forced her in an area. He said, I will fuck you, you white bitch. Your Honor, there's no indication that the experts specifically relied on that statement when they came to their diagnosis. This evidence was put before the jury simply to inflame the passions of the jury. May I interrupt you just for a moment? Of course, Your Honor. Under the statute, I don't think we've ever heard the F word used in this courtroom before, but other than in the statute, are the doctors required to give, doesn't their opinion exist? Isn't it intertwined with the sexual offenses? Yes, Your Honor. And doesn't the state have a burden to show, we agree that a person should not be committed based upon prior criminal sexual acts, but the act under which Mr. Butler has been committed does require that there is a medical, I'm sorry, mental disease. Correct? Correct, Your Honor. And that it is likely that based upon the previous offenses, it's likely that he will re-offend if he were to be released. That's correct, Your Honor. They rely on the complete offending history when they come to their diagnosis. In their testimony, they did have to indicate to the jury that part of the basis of the opinion was his history of committing prior sexual acts. Absolutely, Your Honor, and that was entirely proper. All right, so it's kind of a fine line to say that the state was arguing this as substantive evidence when it was the basis of the opinion of the doctor. True? True, Your Honor, but we have that fine line being crossed here. Well, that's the issue, and the court, I think, on each occasion, when Dr. Squire and then Dr. I forget the woman's name, the psychologist that testified, Ransom, the jury was advised, were they not, that they should consider the evidence solely for the purpose of the foundation for the medical or psychological or psychiatric opinion. True?  True, Your Honor, and that's because it was such an inflammatory issue and it was a sex offense that the jurors weren't necessarily presumed to follow law under that circumstances, which is the only reason that I put forth before this court the quote from the state about the argument just to show really how prejudicial and inflammatory the argument during closing was. And so the state went through all the details and then came finally and said, we have three propositions to prove. First is a conviction, they went through that in about one paragraph of the record, then they moved on to the mental disorder and the substantial probability to re-offend. They didn't talk about the details of the convictions in the context of the expert's opinion, which is really part of the reason that this is so inflammatory and prejudicial to Mr. Butler, not the fact that the testifiers testified in information that they had every right to testify to and rely upon, it's the way that the state used the evidence before the jury. But they did provide everything that they said in their actual testimony, didn't they? They did, Your Honor, and they're repeating it over and over. Well, I mean, the doctors did testify to essentially those facts, so the jury was going to hear this in the context in which it was given. Now, is this an error, if it is an error, subject to the harmless error rule? This would not be harmless error because there was not overwhelming evidence against Mr. Butler in this case with respect to the fact that he had a mental disorder. And whether that mental disorder meant he was substantially probable to re-offend. Now, when you say that it wasn't overwhelming, there were two doctors that testified. Each one gave an opinion, each one said he suffered from a mental disorder or defect, and that there was a substantial likelihood that he would re-offend, correct? Correct, Your Honor. And there was no other contrary evidence, was there? Well, there was the cross-examination, which we would submit substantially weakened the state's case, and we have a situation where both the doctors testified to the fact that the actuarial instruments used were only moderately accurate. And also we have the fact that Dr. Ransom was relatively and very inexperienced when it came to doing sexually violent persons. Well, how many people had she examined? I believe at that point it was, sexually violent person evaluations, I believe under 10 people. She had been doing it for a year. What about Dr. Squire? Dr. Squire had more experience, Your Honor, but again we can look at the... Yet he examined maybe somewhere in the neighborhood of 600 sexually violent offenders, and 300 of them were in Illinois. Is that correct? That's correct, Your Honor. Do you think that either of the doctors backed off their opinion in this case based on the cross-examination? Not that they backed off their opinion, but just that their opinion was significantly undermined when we look at the actual aerial instruments employed, that they're only moderately accurate, that the dynamic risk... And how did you show that they were only moderately accurate? The trial counsel didn't show that, just merely ask doctors, isn't it true that they're moderately accurate instruments? And the doctors both testified that yes, that is the case. But their opinion was still their opinion. Correct, Your Honor, that's correct. If I could turn to the final issue that Mr. Butler was denied, his statutorily guaranteed right to a dispositional hearing. Section 40b-2 of the Act specifically sets forth what is required for the trial court to consider when it comes to disposition. Specifically what arrangements are necessary to ensure that the respondent will participate in treatment in the community, or whether it's more appropriate to do treatment in a secure facility. Trial court in this case granted a motion to eliminate by the state that precluded Mr. Butler from entering, or cross-examining, or putting forth any evidence with respect to disposition during trial. After judgment, the trial court told the respondent when he moved for a dispositional hearing, Mr. Butler, quote, does not have a right to a dispositional hearing. Well, I think the state's kind of backed off that position and has taken the position before us that there was a dispositional hearing. That what happened there was sufficient based on what the statute provides for. You'd agree with that, right? That's how you understand the state's position? Yes, sir. Not that you'd agree with the state's position. I wouldn't expect that. We saw a flurry of additional authority coming in the last few days, and so let me ask you, is this the Fields case, or is this the Dodge case, or is it somewhere, where do you think this case lands? Fields case, Your Honor. And why do you say that? Because Mr. Butler did not have a dispositional hearing, and Fields specifically set forth three things with respect to disposition. First, that a dispositional hearing is required. Second, that the trial court cannot prevent respondent from setting forth evidence with respect to disposition, and the trial court denied the dispositional hearing, did not have evidence, and denied respondent the opportunity to present evidence. There was no hearing here. That there was, that the respondent was prevented from presenting a witness, but is there anything in the record here that shows that the respondent, in this case, had a witness to present? Was there any mention, I want to call a witness, or was there an offer of proof or anything like that that shows us that there was evidence to present? There was no offer of proof, but there was no notice given that this dispositional hearing would not be held, that it would not be held. It would be denied to respondent. Section 25B specifically provides that reasonable notice should be provided for any hearing, and that did not happen here. There was no reason for trial counsel to assume that there wouldn't be a dispositional hearing when respondent was specifically precluded from presenting evidence with respect to disposition during trial. So what you have is a bait and switch, or you have during trial, no evidence with respect to disposition was allowed. Then after judgment, sorry, no hearing is allowed either. The fact of the matter is that there was no adversarial process with respect to disposition. Yes, there was cross-examination during trial, but there was no adversarial testing with that evidence as it would pertain to a disposition, what would be appropriate conditional release or treatment in a secure facility. Was there any testimony during the actual trial proceedings that conditional release would have been a viable alternative in this case? No, Your Honor, because it was precluded from being allowed in at trial by the motion to eliminate. Is that circumstance present in the cases that were presented to us today, this motion to eliminate to prevent that type of examination in front of the jury? Not in fields, Your Honor. Was there a motion to eliminate, though, in this case? In this case, yes, the state filed a motion to eliminate which was granted precluding evidence with respect to disposition coming in during trial. Was there a motion, after the dispositional hearing, was there a motion to reconsider file? It was put, set forth in the motion for a new trial, Your Honor, where the trial court reiterated its position that Mr. Butler was not entitled to a dispositional hearing. Well, but was there anything in that motion for a new trial that set forth the fact that Mr. Butler wished to proceed with a new trial? Present certain evidence that was presented for doing so? Yes, Your Honor. What did it say? I'm sorry. Exactly what it said. I can't recall off the top of my head. It was in the motion for a new trial. But you were prevented from presenting certain evidence, or at least cross-examining with regard to disposition? Right. We were prevented from presenting evidence in contravention of the statute and of fields, and prevented from having a dispositional hearing. There was no opportunity for that hearing to be held. Would there have to be some prejudice shown here, or not? Well, in this case, there really, this is not a case where there's harmless error, where we're precluded from setting forth this evidence at trial, and then, upon judgment, told that there's no hearing, because there's no adversarial process. There's a complete breakdown here. What would be the proposed evidence that would take place at the hearing? We had an expert appointed that would testify to that it could be appropriate for treatment to occur on conditional release. So that would be the nature of the dispositional hearing. Is it in the record anywhere? No, Your Honor. Did the expert have that opinion? Was this ever done? Was the expert ever called upon to examine Mr. Butler for purposes of a dispositional hearing? No, Your Honor, because the respondent was under the impression that there would be a dispositional hearing when the respondent was able to present evidence. So it was envisioned that it would take place, that the examination would take place after? Yes, Your Honor. So for those reasons, and the reasons set forth in our brief, we would ask for Your Honors to reverse or remand the matter for a new trial, or at a minimum, vacate the commitment order and remand for a dispositional hearing. And one more question. On the dispositional matter, what would be, if we were to accept your argument on that, what would be the appropriate order for that, just that issue alone, that discrete issue? Just that issue would be to vacate the commitment order and remand for a dispositional hearing, Your Honor. All right, and you will have some time for rebuttal. Thank you, Your Honor. All right, now we will hear from Ms. Payne. Good morning, Your Honors. May it please the Court, Lindsay Payne from the Attorney General's Office on behalf of the people. I would like to begin with the dispositional hearing issue, if I could. As an initial matter, I'd like to point out that the first time the notice argument was presented to this Court was in Respondent's Reply Brief. Section 25 of the Act was not included in the opening brief. There was no argument about a lack of notice, so it would be the people's position that that argument is forfeited. I'd then like to turn to the Fields case, and there's two important points that I think the Court has already hit upon. Two ways that this case When you say notice, what do you mean? I believe that Respondent is arguing that there is a statutory right to notice of when the hearing would take place under the Act, and that that is set forth in Section 25 of the Act. That's not an argument that was raised in the opening brief. But the argument that he was entitled to a dispositional hearing was clearly raised. Right, yes, completely. It's just that notice aspect of it. And so with respect to Fields, there's two important ways in which this case differs from Fields. The first one that the Court hit upon is that in this case the Respondent did not state that he wanted to present a witness for dispositional hearing. He didn't have a witness. What he asked for was a continuance of the hearing for the purposes of a supplemental evaluation. But is it correct, though, that Ms. Bach indicated that there was a motion in limine that the State filed not to mention any possibility of a dispositional order involving a conditional release? Was that presented before the trial? No, it wasn't. It was presented before the jury, you know, if you commit, then this person is going to be sent to an institution. That kind of statement is inappropriate before the jury. Was there a request for this appointment of another doctor or psychologist to give an opinion about a conditional release? No. The request was for a doctor to be appointed for the purposes of the trial and the adjudicatory phase of the trial, and that was done. I don't believe there was any deposition of that expert because it appeared that Respondent didn't intend to call that expert at trial. And so as we sit here today, the record is completely devoid of what that expert's opinions are, what they would have said. There was no request, you know, can we present this expert for purposes of disposition. The only request that was made was for a supplemental evaluation, and the record is clear. Respondent acknowledges on page 45 of his opening brief that the only evidence that was sought to be presented was evidence to be obtained through a supplemental evaluation. And the record at the time of the dispositional hearing bears that out as well. The statement was, we will be asking to have an evaluation of Mr. Butler so we may present that evidence to the court. And so it appears that all of the parties understood that this was a request for a continuance of the proceedings for purposes of a supplemental evaluation. The court in fields distinguished the facts in that case from Winterhalter and Teitelbach, where the Respondent did not want to present that evidence. The Court did not ask to present testimony that would have been independent of a supplemental evaluation. Fields thus determined that given the Respondent's request to present a witness at the dispositional hearing, the interests of justice demanded a continuance, if only for a day. But this case is not fields. It is like Winterhalter and Teitelbach, in that Respondent only asked for a supplemental evaluation. The record bears that out, and we would ask you to affirm... Winterhalter? I'm not aware of whether that was. My understanding is that it's common practice that unless one is having a bench trial, those issues would never be presented before the jury. But, and I see where Your Honor is going here. Well, it's not where I'm going, it's where they're going. And she made an interesting, I don't know if analogy is the right word, but she said, well, this is a bait and switch. Because if you come before the trial court in a motion to eliminate and say, you know what, let's not get into disposition now, that's for later. And then when later comes, you say, oh, we're not going to get into that. And that's a bait and switch? I would disagree. There's two points on this. One, we would disagree that Respondent was prevented from presenting that testimony. If at the time of the dispositional hearing, they had come forth with a witness, or they had a proffer, saying, we have a witness who wants to testify. Didn't the ruling on the motion to eliminate prevent them from cross-examining your experts on the question of disposition? These are the three statutory factors. The first is the nature and circumstances of the behavior that formed the basis of the allegation and the petition. There was testimony all over the record on that point. What were the crimes, what were the behaviors that led to the convictions and ultimately to the petition in this case? And there was cross-examination on that point, which is one of the statutory factors. The second is the person's mental history and present mental condition. Again, that was what the trial was all about. What are the diagnoses? What does Mr. Butler suffer from? How does it affect his impulse control? What is his present mental condition at this time? That was testified to, and there was cross-examination on that point. The third and final factor is what arrangements are available to ensure that the person has access to and will participate in necessary treatment. Has there been a six-month review? I would imagine at this point that there has been, but I'm not aware of it, Your Honor. Well, so you're not aware. I can't answer that question. It is required, isn't it? Yes. And isn't it in the nature of a review of whether or not the individual should remain contained to the Department of Human Services? Is that the right department? Yes, Department of Human Services. Or whether he is a candidate for conditional release? Correct. One may petition either for conditional release or for discharge, in which case you'd be saying you're no longer an SVP. Well, six months has passed since this disposition, hasn't it? Yes. Would that render this issue moot if there's been a hearing and a finding one way or the other? Or you don't know? I'm not expecting an answer. I've just been throwing that out. I think it could, Your Honor, if there has been a hearing. The procedures are somewhat different. There's sometimes a probable cause determination to determine whether a hearing is necessary. I'm sorry. The language does say the court shall enter an initial commitment order pursuant to a hearing held as soon as practicable after the judgment. Isn't that a mandatory requirement? People concede that there is a hearing requirement, but the question is, when does that hearing take place? As soon as practicable. Yes. And the people would submit that the default language, when the court lacks, is that what you're referring to? Well, the immediately following the trial portion. If the court lacks sufficient information to make the determination required immediately after trial. And we may be in a different position if there was evidence here that there was a witness. Well, I want to get back. You were in the process of telling us the three factors that are supposed to be taken into consideration, whether this shall be a secure facility or conditional release. And the third factor, you said, is what arrangements are available to ensure that the person has access to and will participate in necessary treatment. Are you saying that the motion to eliminate didn't prevent them from questioning the experts about whether there are conditional release arrangements that could have been made for him to participate in treatment on a non-secure basis? Wasn't that the purpose of the motion to eliminate? I think I agree that those specific questions would have been prohibited. But I would disagree that the court lacked sufficient information on that factor. Because what happened here is both experts testified that the respondent had very briefly engaged in treatment in 1989, 1990. He was reoffended thereafter. He was returned to IDOC custody where he declined to participate in the treatment that was offered to him. When he entered DHS custody, he was again offered treatment. He was residing in a facility that was designed to give treatment to sex offenders. He refused to participate. And so what I think happened here is the trial court said, I don't lack sufficient information on this factor. Because if he's refusing to participate in treatment in a residential facility, how do I have any assurance that he's going to participate in the community? Well, let me ask you this. Since there was no evidence allowed to be discussed at the trial regarding whether he's a candidate for commitment or conditional relief, is that true? I would disagree. Because I think the three factors, that all goes to whether he's a candidate for conditional release. His present mental condition, his impulse control, his history, those are all factors. And so maybe it sounds like I'm splitting hairs, but they couldn't ask, you know, is there some place that he could, is there a halfway house he could live at? They couldn't ask that question. Immediately after the trial and the jury's finding, was there testimony specifically related to whether or not he was a candidate for conditional release or subject to commitment by either of those two doctors? There was no additional testimony following the verdict. And this goes, I think, to a point that came up in my opponent's argument. It goes to prejudice. There was no witness that was offered. And this is another way that this case differs from Fields. Because Fields relied, at least in part, upon a forfeiture determination. In footnote four of the Fields opinion, the court ruled that the people had forfeited their harmlessness and prejudice argument by failing to adequately support it with legal authority. And, in fact, Fields conducted no prejudice analysis whatsoever. Here the people have submitted additional authority, namely people be more and people be sergeant. Those cases address what prejudice a litigant must show in order for the denial of a continuance to present additional evidence to be reversible error. And I think prejudice is really the crux of this case. We can't say with the record before us whether the outcome of the disposition would have been any different had respondent presented additional evidence. What did the court specifically say when it entered the order that he be committed? You know, it is summary. Well, in summary, the court did say loosely that there is not a right to a hearing or an immediate hearing. I misspoke. And then it discussed the factors under section 40B2 of the act that it found supported commitment in this case. All right. So the court made the finding that the facts and the evidence supported commitment. Yes, and specifically found that he did not lack sufficient information at that point to make the dispositional ruling. And going back to prejudice, is there anything in the act that says that the respondent is entitled to an evidentiary hearing? Or is it just simply the word hearing? It's just the word hearing. And even the definition that respondent provided in his opening brief doesn't say that a hearing requires evidence to be presented, especially where none is offered. A hearing may be the point where the court looks at the evidence and says, I know enough at this point. I don't need to order a supplemental evaluation. Were they even given an opportunity to be heard? Doesn't due process in a hearing require at least the opportunity to be heard? I think two points on that, Your Honor. One, there was an opportunity, and when given that opportunity, respondent asked for a supplemental evaluation, rather than to present a witness independent of a supplemental evaluation. And the second point is that a due process challenge is not before this court. Due process was mentioned in passing in the reply brief. All that was raised in the opening brief was a statutory challenge, saying we're entitled to a hearing under Section 40 of the Act. Well, I guess what I'm asking is, what's a hearing? Contrary to what the trial court said, it says there shall be a hearing. So what's a hearing? Is a hearing just everybody standing there and the judge saying, I know enough? Or is a hearing the opportunity to be heard and present evidence? Where none is offered, where no evidence is offered, I think a hearing can be the court just saying, I've heard what took place at trial, and this is what I'm ruling. I think this would be a very different case if any evidence had been offered. And we have no idea what evidence could have been offered. And it was incumbent upon respondent to make a proffer. I think respondent was focusing on the transcript at the time of the disposition, but that's not the only opportunity that they had to make their record. What about the post-trial motion? Was there anything in the post-trial motion that indicated that there was additional evidence that they wanted to present, that they were precluded from presenting? None. There was no statement that they had a witness. They said that they found the dispositional hearing inadequate, but they never said that there was a witness, that they wanted a witness, what this witness's name was, what this witness could have possibly said to have changed the outcome of this trial. How do you interpret that language? If the court lacks sufficient information to make the determination required by the previous paragraph, the court may adjourn the hearing. What is your interpretation of that language? My interpretation, which I think is consistent with Winterhalter and Teitelbach, is that immediately after the verdict, if the court doesn't lack sufficient information to make the dispositional ruling, it can enter the dispositional phase right then. And that's not to say that if the respondent had a witness present, that the court would have complete discretion to deny them that opportunity. That's to say, we don't need any supplemental evaluation. There's no reason to delay, so we're doing dispositional hearing now. And it's really important, I think, to put this in the context of, what are these proceedings? This is not a criminal proceeding, it's a mental health proceeding. And the issue at any mental health proceeding is the present mental state of the respondent. The parties often spend years trying to get the expert's opinions up to date. There's often multiple iterations of depositions and expert reports to reach a point where everyone can say, this is the present mental condition. I think we should move on to your other arguments because of the time. And let's talk about the arguments of the attorneys regarding the criminal acts. And counsel's suggestion that they were used here as substantive evidence and they were argued improperly before the jury so that the defendant was denied a fair hearing. Yes, I'd begin by noting, and the court hit upon this, that the jury was instructed as to the proper treatment of basis of opinion testimony. They were issued a limiting instruction before each witness' testimony. They were again instructed following closing arguments and again in writing. Additionally, they were instructed that opening statements and closing arguments are not evidence and are not to be considered as such. But the way they were argued in opening, the judge didn't pipe in and advise the jury at that moment, did he? No, the court did not interject during either opening statements or closing arguments. But the prosecutors did begin their closing argument by putting this in the context of this is what the experts relied upon. And Judge McHale was very clear. So are you saying that if you look at the entirety of the opening remarks and the closing arguments, that the facts of the offenses were prefaced with the idea that these are being told to you because this is what the doctors said was the basis for their opinion in reaching the conclusion that Mr. Butler's candidate for a finding under the sexually violent persons act? Yes, Your Honor. And throughout the closing arguments, the prosecutors returned to the specific language that the experts had used that we're looking for a pattern of sexual deviant behavior. Repeatedly, Judge McHale said, I was counting. And he found that it was proper and it had comported with the orders in limine. And while some of the statements that Respondent has pointed out, when taken out of context, do sound prejudicial, they were highly relevant to points that were contested at trial and to a certain extent that Respondent had opened the door for. He claimed, for example, in his interview with Dr. Swire, that his 1975 offense, which was an attempt rape, was consensual. He claimed that his 1997 offense was a situation where he was attacked by a prostitute and he had to defend himself. And all throughout the trial, Respondent focused on, was the basis for the expert's opinion reasonable? Was it reasonable for them to rely on these things? And so the specific portions of his underlying crimes that made it reasonable for the experts to reject Mr. Butler's version of events and to instead accept the version of events in the criminal case files was highly relevant to the jury. The victims were screaming, third parties had to intercede. He told them that he was going to rape them. That was all relevant to the issues that were before the jury. And as Your Honor has noted, that was the context in which it was presented. Well, that's what you've said. I was asking if a review from the beginning to the end of the opening and closing would show that they were placed specifically in the context of the basis for the doctor's opinions in this case. Yes, Your Honor. That's our position. Well, moving into the other issue, do you think that the judge saying, if you hear that he's been convicted of a sexually violent offense, will that prevent you from being fair in this case? So you have this claim that the state is over-arguing the facts of the offenses. And then the judge having said to the respondent, I'm going to let you, we'll go into this in voir dire, and then all of a sudden he changes his mind and says, I'm just going to phrase it this way. Now, isn't there some validity to the suggestion that to really pierce the jurors that are going to hear this case? That if they are told at the outset, you know, can you be fair in this case if you learn that this particular respondent has had three previous offenses of a sexually violent nature, can you be fair in this case? I think that the court was really trying to walk that line. To allow respondent to explore bias without previewing the evidence in the case. And there's two principles I think at play here. One, when you're talking about a voir dire question that relates to something like prior convictions or basis of opinion testimony, that's going to be addressed in the court's instructions to the jury on the proper evaluation of the evidence. The court does not abuse its discretion by prohibiting that question, that's people v. Brandon and Illinois Supreme Court Rule 234. That the proper treatment of these prior convictions was addressed in limiting instructions to the jury and to ask them how will you consider this evidence before you instruct them on how to consider the evidence is going to be, you know, lead to difficulty in handling a jury. And the second point is that... Well, but we don't ever want to lose that fair jury to decide the case. Absolutely. Someone can say that, you know, with this information, can you still be fair? Now 40 people said they couldn't be fair when they heard about the fact that he had a prior offense. We have no reason to believe, none of the articles cited by respondent suggest that jurors are more biased towards someone with three sexual offenses versus one. And I think this case is really, it's people v. Jackson, which the court relied upon. In people v. Jackson, the defendant in that case wanted to, he was on trial for multiple murders. He wanted to ask the jury, would you always vote for the death penalty if a defendant were convicted of multiple murders? And the court said no, that's previewing the evidence to the jury. Well, how would you preview the evidence if you simply said that the respondent has more than one conviction for a sexually violent offense? Or in this particular case, the respondent has three sexually violent offenses in his history. And will you be able to, you know, be fair and impartial in reaching a decision in this case with that in mind? I think it's previewing the evidence because what the experts then come in and testify to is, I considered these instances. Well, isn't previewing the evidence then, can't you say that for the fact that the judge told the jury that the defendant was convicted of an offense? I mean, that's not previewing the evidence. You're not going into the facts of that offense, and I don't think the suggestion here was to go into the facts of those offenses, but to pull from the jury whether they could be fair when they find out that there are three different offenses that form the basis of an opinion. Well, the question is whether the jury that was empaneled was biased in this case. Was the denial of that question, did it lead to, you know, thwarting the selection of an impartial jury? And I don't think that that prejudice standard has been met in this case. We can't say that the denial of a more fact-specific inquiry thwarted the selection of the jury. Well, how many veneer persons were brought to the courtroom, do you recall? I don't know the exact number, but I would agree with Respondent's statement that approximately 40% indicated that they would be biased towards sex offenders. 40% or 40 individuals? 40%, I believe. The number of people that were brought up, yes. Wouldn't common sense say that if 40% said, oh, yeah, he's biased, he's sexually dangerous, and there's one conviction, wouldn't common sense say, well, you've got one, two, but three? Don't you think the judge probably said, I can't get a jury here by saying three? I think he really was just trying to follow Jackson, and Jackson is where the Illinois Supreme Court said, that's where the line is. You can explore this issue in all of the cases that Respondent relies upon, where the court found that the questioning was insufficient. It was a situation where the court completely prohibited questioning about an entire issue, for example, gang membership. We're not allowing any questions about gang membership. That's not the case here, and that's not the case in any other case where the questions were found insufficient. They were allowed to explore the issue here, the court was worried that the jury was going to then want to have follow-up questions, what exactly were the convictions? I don't know if I can be impartial, not knowing what these three convictions were, he was trying to head that off. Were those questions raised with regard to the one? They were not, no. It appears that that didn't come to fruition, but I think it's a line drawing, there's no evidence here that a biased jury was actually impaneled, and this case is, I think, indistinguishable from Jackson. So you believe there's a prong that's required, that when the court doesn't allow a particular question, that somehow there has to be some showing that a jury, a biased jury was the result? I think on appellate review, that the standard is where the denial thwarted the selection of an impartial jury, and it's an abuse of discretion. Yes. All right. If there's no further questions, we would ask that the court affirm the judgment below. Thank you, Your Honor. With respect to the dispositional hearing, respondent did not move to adjourn the hearing. The record does not reflect that there was a request to adjourn the hearing. The record says we will be asking to have a dispositional hearing. So two very different things. Second, the motion in limine, which I have here, specifically says that any testimony questions that might infer or apply any information about commitment options, such as a secure care or conditional release, or the length of the time respondent may remain in secure care, et cetera, such a statement is tantamount to commenting on sentencing during a criminal trial. So that was what was precluded during trial. With respect to Winterhalter and Teitelbach, those cases presented an opportunity for the respondent to argue or an opportunity to present evidence, because there wasn't the motion in limine situation that we have here, and the respondent was able to argue. So those cases are different than Mr. Butler's case. Well, what was the argument that counsel made to the judge when there was this request for a hearing? What exactly did he or she say? He said we will be asking to have a disposition hearing. We will be asking to have an evaluation, and Mr. Butler is going to present that evidence to the court, so the court may decide what recommendation to make to the Department of Human Services. And the court responded that defendant does not even have a right to an immediate dispositional hearing. I'm sorry, not immediate. He does not have a right to have a dispositional hearing, according to the two second district cases, which were Varner and Teitelbach. With respect to the argument that the state adequately prefaced the closing argument with the fact that this is what the expert relied upon, Before you leave that, is there any indication in the record that the respondent wished to reexamine the experts with regard to disposition? Was there anything in his comments that day, or in the motion for new trial, that you precluded us from asking about disposition, we'd like a chance to do that? Your Honor, the... Because it's clear that they were precluded from doing that, based on the order in limine. But is there any indication that that's something that they wanted to do? The indication was just that they asked for it, and it was very clear that the trial court was not going to grant a dispositional hearing when he repeatedly says he does not have a right to a dispositional hearing. So at that point, there was no opportunity to do anything. The judge did not have a right to a dispositional hearing. And so I believe we have made the record with respect to that issue. Well, you know, we hate to send a case back to the trial court to have a dispositional hearing and have the judge look at the respondent and say, what do you got? And they have to say, well, we don't have anything. I mean, we'd like to know that there's something to send it back for. So what is your position as to what it is that Mr. Butler wants to do when he goes back in front of Judge McGill? We want to have an expert which would testify in the context of disposition and what arrangements could be necessary for care and treatment, whether that's on conditional release or in a secure facility, and to have the opportunity to really evaluate that issue and not just evaluate the issue with respect to his mental disorder and his likelihood of reoffending, which is what the experts did at trial. You are aware as well that there's a six-month checkpate, right? There's a hearing that takes place. Yes, Your Honor. It has to take place. So what happened in this case? Do you know whether something changed at the six-month where there was testimony that he's subject to, he should be conditionally released? Was there anything like that presented? Not to my knowledge, Your Honor, but it would be our position that that wouldn't cure the error at the trial court level. Well, wouldn't it render everything moot if there was a subsequent hearing, which is required after six months, that would show that he is still in a position because of the history that he would not be a candidate for conditional release? Your Honor, I think the six-month evaluations wouldn't necessarily be in the context of disposition alone and in the context of what happened at the trial court level. Well, if no one is available to give an opinion at this time that, based on everything that I've reviewed and his history, treatment, and the nature of the previous offenses, that he is not likely to reoffend and that he could be conditionally released, if no one can give that opinion and there's been a subsequent six-month hearing, I don't see how this is still alive. Because if he's not a candidate six months afterwards, how could he have been a candidate or is it even a live issue now, whether he could have been conditionally released then? Do you see what I'm saying? I see what you're saying, Your Honor. I think we'd also consider, in addition to that, the fact that this Court is reviewing the trial court's use of its discretion. And what it did here is it really abused its discretion and it denied a statutorily guaranteed right to a hearing in a case where, yes, it's a civil case, it's a mental health proceeding, but what is really at stake is indefinite, involuntary, extended incarceration. That's why they have the six-month, they have the year, they have another six months, it goes on and on and on. And the respondent is entitled to demand a hearing every six months. This question of moodness isn't in any of the briefs, is it? No, Your Honor. It's never been discussed in one way or another? No, Your Honor. And when the appellate courts look at the question of moodness, one of the things we look at is whether or not we should consider an issue of policy concern that should cause us to disregard the moodness of the issue. Isn't that right? That's right, Your Honor. And if trial judges all over this district are refusing to grant dispositional hearings when they should grant dispositional hearings, and for us to say six months down the road, well, it doesn't matter because six months down the road they're going to get this hearing anyway, that might be a reason to disregard moodness, wouldn't it be? Yes, it's correct, Your Honor. But that's not before us, is it? I mean, nobody's argued. Nobody's had a chance to even brief this question of whether or not moodness should be applied or disregarded or anything, right? That's correct, Your Honor. It's not in any of the briefs. So with that, we would ask Your Honors to remain for a new trial or vacate the commitment order, remain for a dispositional hearing. Thank you. All right. The case was very well argued and well briefed, and we will take it under advice.